IN UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO.: 1:17 CR 00513-003 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| -vs- | ) | **SENTENCING MEMORANDUM OF** |
| | ) | **IRWING VARGAS ROSARIO** |
| IRWING VARGAS ROSARIO | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOW COMES the Defendant, **IRWING VARGAS ROSARIO**, by and through his undersigned counsel, and hereby submits his Sentencing Memorandum. Mr. Rosario respectfully requests this Honorable Court consider a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. §3553. A more thorough explanation of his sentencing request is attached hereto and incorporated herein in the attached Memorandum in Support. The intended submission of this Sentencing Memorandum is to assist the Court in fashioning the Defendant, **IRWING VARGAS ROSARIO's**, sentence on May 21, 2019 at 10:00 a.m.

Respectfully submitted,

 */s. James M. Campbell*
JAMES M. CAMPBELL, #0004733
Attorney for Defendant, Irwing Vargas Rosario
2717 Manchester Road
Akron, OH 44319
P: (330) 745-2422
F: (330) 745-2447
jamescampbell@campbelllawakron.com

1

## MEMORANDUM IN SUPPORT

### A. PROCEDURAL BACKGROUND

On December 8, 2017, a 29 count Indictment was filed against fourteen people, including the Defendant, **IRWING VARGAS ROSARIO** (hereinafter referred to as Mr. Rosario).

Mr. Rosario was arrested on December 7, 2017 and was detained. He remained in detention until December 21, 2017 when he was given a signature bond and placed under pretrial supervision.

Mr. Rosario was named and charged in three counts which are as follows:

Count 1: Conspiracy to possess with the intent to distribute controlled substances in violation of 21 USC 841(a)(1), (b)(1)(A), and (b)(1)(C) in violation of 21 USC 846.

Count 2: Aiding and abetting in violation of 21 USC 841(a)(1), (b)(1)(A), and 18 USC 2.

Count 26: Unlawful use of a communication facility in violation of 21 USC 843(b).

On February 8, 2019, Mr. Rosario plead guilty to Count 1 (conspiracy) in a written Plea Agreement. Pursuant to the terms contained in the Plea Agreement, the government has agreed to dismiss Counts 2 and 26 at sentencing.

### B. FACTUAL BACKGROUND

Mr. Rosario's father, Irwin Vargas, and other co-defendants were investigated by government agencies from May 2015 to December 2017. Mr. Rosario's involvement was as a courier and gopher for his father's drug trafficking organization.

**C. PRETRIAL RELEASE/BOND/DETENTION**

As previously written, Mr. Rosario was detained on December 7, 2017. After several bond/detention hearings, he was released on an unsecured bond on December 21, 2017 and placed on pretrial supervision with location monitoring.

On March 29, 2019, the court approved the removal of his electronic monitoring device.

Mr. Rosario has never violated any of the terms of his supervised release from December 21, 2019 to the date of this Sentencing Memorandum.

**D. PLEA AGREEMENT**

There is a written Plea Agreement in this matter. The pertinent parts of the Plea Agreement are as follows:

1. Counts 2 and 26 of the Indictment will be dismissed at the time of sentencing at the government's Motion.

2. The statutory penalty for Count 1 is a maximum sentence of imprisonment of 20 years, and a minimum period of 3 years of supervised release.

3. The Court will determine the advisory guideline range after a presentence report has been prepared by the U.S. Probation Department and reviewed by all parties.

4. The government and Mr. Rosario stipulate that the amount of drugs attributable to him is between 55.73 grams of cocaine and 2 grams of heroin.

5. Mr. Rosario and the government agree with the following guideline offense level computation:

    | | |
    |---|---|
    | Base Offense Level | 14 |
    | Safety Valve | -2 |
    | Subtotal Before Acceptance of Responsibility | 12 |

6. The Government will recommend a two-level reduction for acceptance of responsibility.

7. Mr. Rosario's criminal history shall be determined by the Court after the completion of a Pre-Sentence Investigation by the U.S. Probation Office.

8. If Mr. Rosario is given all of the adjustments set forth in his Plea Agreement, his final total offense level should be 10, which is calculated as follows:

| | |
|---|---|
| Base Offense Level | 14 |
| Safety Valve | -2 |
| Acceptance of Responsibility | -2 |
| | 10 |

**E. LAW**

In *Peugh v. United States*, 133 S.Ct. 2072, 569 U.S. 530, (2013), the United States Supreme Court set out the following history with regard to the United States Sentencing Guidelines:

> Prior to 1984, the broad discretion of sentencing courts and parole officers had led to significant sentencing disparities among similarly situated offenders. To address this problem, Congress created the United States Sentencing Commission. *Mistretta v. United* States, 488 U.S. 361, 362, 366-367, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The Sentencing Reform Act of 1984, 98 Stat. 1987, eliminated parole in the federal system and directed the Sentencing Commission to promulgate uniform guidelines that would be binding on federal courts at sentencing. *Mistretta*, 488 U.S., at 367, 109 S.Ct. 647. The Commission produced the now familiar Sentencing Guidelines: a system under which a set of inputs specific to a given case (the particular characteristics of the offense and offender) yielded a predetermined output (a range of months within which the defendant could be sentenced).
>
> In *United States v. Booker*, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), however, this Court held that mandatory Guidelines ran afoul of the Sixth Amendment by allowing judges to find facts that increased the penalty for a crime beyond "the maximum authorized by the facts established by a plea of guilty or a jury verdict." See also *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The appropriate remedy for this violation, the Court determined, was to strike those portions of the Sentencing Reform Act that rendered the Guidelines mandatory. *Booker*, 543 U.S., at 245-258, 125 S.Ct. 738. Under the resulting scheme, a district court is still required to consult the Guidelines. See id., 2080*2080 at 259-260, 264, 125 S.Ct. 738; 18 U.S.C. § 3553(a)(4)(A). But the Guidelines

are no longer binding, and the district court must consider all of the factors set forth in § 3553(a) to guide its discretion at sentencing, see *Booker*, 543 U.S., at 259-260, 264, 125 S.Ct. 738. The *Booker* remedy, "while not the system Congress enacted," was designed to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary." *Id*., at 264-265, 125 S.Ct. 738.

Following *Booker* there was a triad of Supreme Court decisions in 2007, *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007); *Gall v. United States*, 552 U.S. 38, 128 S.Ct 586, 169 L.Ed.2d 445 (2007); *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2207) clarified that a district court must begin its sentencing consideration with the Guidelines. See e.g. *Gall*, 552 U.S. at 49, 128 S.Ct. 586.

These cases developed a three-step process that Courts are required to follow before imposing sentences on defendants. This three-step process was very succinctly set out by the Honorable Chief Judge Curtis L. Callier in *United States v. Rothwell*, 847 F.Supp.2d 1048 (E.D. Tenn 2012):

> First, the Court determines the proper advisory Guidelines range. *Gall,* 552 U.S. at 49, 128 S.Ct. 586 (" [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range ....") (citing *Rita* ); *see also Bistline,* 665 F.3d at 761 ("Although the Sentencing Guidelines are now only advisory, they still 'should be the starting point and the initial benchmark' for choosing a defendant's sentence.") (quoting *Gall,* 552 U.S. at 49, 128 S.Ct. 586). To make this determination the Court often will have to resolve objections to the PSR's Guidelines calculations as well as any factual or legal disputes related to a defendant's criminal history or offense of conviction. Once the Court has resolved any objections or other disputes, the Court calculates a defendant's advisory Guidelines range using the sentencing table in Chapter A, Part V of the USSG. Performing the Guidelines calculation as the first step permits a reviewing court to " first ensure the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *United States v. Robinson,* 669 F.3d 767, 773 (6th Cir.2012) (quoting *Gall,* 552 U.S. at 51, 128 S.Ct. 586).

> Second, the Court determines whether a departure from the advisory Guidelines range is warranted. This step requires the Court to determine whether, pursuant to the USSG Manual, any departures from the advisory Guidelines range apply. USSG ch. 5, pt. K; *Phelps,* 366 F.Supp.2d at 586. To

5

assist the Court in determining whether it should grant an upward or downward departure, the Court considers arguments and motions filed by the parties under the Guidelines or the Commission's policy statements. 18 U.S.C. § 3553(a)(4) and (5). As the Court observed in *Phelps,* "[d]etermination of departures also allows the Sentencing Commission to better fulfill its role in making recommendations to Congress and in making periodic adjustments to the Guidelines in light of actual sentences being imposed." *Id.* at 585. Determination of departures is an essential part of properly calculating the applicable Guidelines range. Only after a court has correctly departed upward or downward (if it departs at all) from the initial Guidelines range has the court determined the proper advisory Guidelines range for sentencing purposes. It is often tempting to avoid the difficult departure analysis and go directly to a consideration of the sentencing factors under § 3553 but doing this would short circuit the sentencing process and defeat the laudable goals of honesty in sentencing, transparency, and appellate review.

Once the Court has determined the proper Guidelines range and decided the propriety of any departures, the Court then imposes an appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). *Phelps,* 366 F.Supp.2d at 586. In sentencing a defendant under these factors, the District Court may not presume the Guidelines range is reasonable. *Gall,* 552 U.S. at 50, 128 S.Ct. 586. Instead, the Court must make an individualized assessment based on the facts presented." *Id.* The Court may impose a sentence within the applicable Guidelines range (after any clearly applicable departures) if such is consistent with the court's consideration of the § 3553(a) factors, or impose a non-Guidelines sentence if such is justified by the § 3553(a) factors. *See United States v. Vonner,* 516 F.3d 382, 387 (6th Cir.2008) (en banc). A non-Guidelines sentence need not be supported by factors that would have justified a departure under the mandatory pre-*Booker* regime. Departure case law, however, is helpful in determining whether a Guidelines sentence is appropriate and in assisting the Court in determining the appropriate sentence. *Phelps,* 366 F.Supp.2d at 586.

## F. SENTENCING PROCEDURES

### 1. CALCULATING THE ADVISORY GUIDELINE RANGE

#### A. Offense Level

The government and Mr. Rosario in his Plea Agreement on page 4, stipulated and agreed to the following with regard to his guideline offense level:

6

16. **Stipulated Guideline Computation.** The parties agree that the following calculation, using the current advisory Sentencing Guidelines Manual, represents the correct computation of the applicable offense level

17. **Guideline Calculation Explanation:** For purposes of determining Defendant's statutory penalty and imprisonment range under the United States Sentencing Guidelines, Defendant and the USAO agree and stipulate that the amount of drugs conspired to be possessed with the intent to distribute and distributed in Count 1 is 55.73 grams of cocaine and 2 grams of heroin, which corresponds to a combined base offense level of 14 pursuant to U.S.S.G. § 2D1.1(c)(13), upon conversion to a converted drug weight of 13.146 kilograms. If the defendant meets the qualification for the safety valve, he'd also qualify therefore for a reduction of two points. Thus, Defendant's adjusted base offense level for Count 1 would be 12 before acceptance of responsibility.

| Conspiracy to Distribute Controlled Substances | | |
|---|---|---|
| Base offense level | 14 | § 2D1.1(c)(13) |
| Safety Valve | -2 | § 2D1.1(b)(17) |
| **Total Offense Level before Acceptance of Responsibility** | **12** | |

Unless otherwise agreed to below, the parties agree that no other specific offense characteristics, guideline adjustments, or guideline departures apply.

Mr. Rosario and the government further agree in his Plea Agreement that the government would recommend a two level reduction for acceptance of responsibility. This same computation is also set forth in the Presentence Report on page 25 in paragraphs 134-142. Mr. Rosario and his counsel agree that his total offense level is ten.

B.  **Criminal History Computation**

Mr. Rosario submits that the Presentence Report writer correctly found him to have 0 Criminal History Points; therefore, he should be placed in Criminal History Category I.

7

    **C.    Departures and Variances**

Mr. Rosario submits that the Court should find that his advisory guideline should be computed based on Offense Level 10 and a Criminal History Category I.

2. **Imposing an Appropriate Sentence in Light of the Factors Set Forth in 18 USC 355(a)**

The Court must next impose an appropriate sentence in light of the factors set forth in 18 USC 355(a). Mr. Rosario and his counsel remind the Court that in sentencing him under these factors, the Court may not presume that the guideline range is reasonable. *Gall*, 522 U.S. at 50, 128 S.Ct. 586

The Court should look at the facts presented, make an individualized assessment, and either impose a sentence within the applicable guideline range or impose a non-guideline sentence if such sentence is justified by the 3553(a) factors.

A sentencing court's "overarching duty" is to impose a "sentence sufficient, but not greater than necessary to comply with the sentencing purposes set forth in [18 U.S.C.] 3553(a)(2)." *Pepper v. United States*, 562 U.S. 476, 491 (2011) (quoting 18 U.S.C. 3553(a)).

18 U.S.C. 3553(a) states as follows:

(a) Factors To Be Considered in Imposing a Sentence. —The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed—

8

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(5) any pertinent policy statement—

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Mr. Rosario and his counsel shall only address the relevant factors as they pertain to his case to assist the Court in determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

**Factor One: The Nature and Characteristics of the Offense and the History and Characteristics of the Defendant (18 USC § 3553(a)(1))**

Mr. Rosario admits and concedes that drug trafficking is a serious problem in the United States. Early on he fully admitted his involvement in this case by pleading guilty and acknowledging that the factual basis set forth in the Plea Agreement accurately sets forth his involvement.

At the time of sentencing, Mr. Rosario will be twenty-six years old.

9

Mr. Rosario has been under pretrial supervision since his release on bond on December 21, 2017. While on bond, he has found employment, not committed any violations, and has submitted numerous negative drug screens.

Mr. Rosario's childhood is fully set out and well documented in his Presentence Report. Needless to say, he had a tough childhood. He came to the United States in 2010 at age 17 and in 2014 he moved to the Cleveland area. Mr. Rosario has never been involved in the criminal justice system previously.

Mr. Rosario currently lives with his girlfriend, Alejandra Rosello. They have a little girl together named Athena Vargas who is age 1. Ms. Rosello believes that Mr. Rosario is a good person and together they attend church on a regular basis.

Mr. Rosario wants to further his education, attend college, and be formally trained as a barber. He wants to be a role model for his daughter and his son, Irwing Noah Vargas, who is 2 years old and lives with his mother in New York.

**Factor Two: The Need for the Sentence Imposed**

    a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. To afford adequate deterrence to criminal conduct;

    c. To protect the public from future crimes of the defendant; and,

    d. To provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Mr. Rosario understands that this Court has the task of imposing a sentence upon him that incorporates and takes into consideration all of the foregoing provisions. He submits that this Court could impose a sentence of probation that still reflects these sentencing considerations.

Mr. Rosario submits that a sentence of probation would accomplish the sentencing goals set forth in 18 USC 3553(a)(2)(A-D) and would not demean the integrity of this Court or the goals of sentencing.

Mr. Rosario argues that a sentence of probation would still reflect the seriousness of his offenses, would promote respect for the law, and would provide just punishment for his offenses.

Mr. Rosario acknowledges that just being involved in this federal case as a defendant is adequate enough to deter him from committing any future criminal conduct. Giving him a sentence of probation will adequately protect the public from him committing any further crimes.

**Factor Three: The Kinds of Sentences Available**

Based upon a total Offense Level of 10 and a Criminal History Category of I, the guideline imprisonment range is six months to 12 months. Because the applicable guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by (1) a sentence of imprisonment; (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in USSG §5C1.1(e), provided that at least one month is satisfied by imprisonment; or, (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent

11

confinement, community confinement, or home detention for imprisonment according to the schedule in USSG §5C1.1(e). USSG §5C1.1(c).

The defendant is eligible for not less than one nor more than five years probation because the offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service.

Because the applicable guideline range is in Zone B of the Sentencing Table, the Court may impose probation with a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention, as provided in USSG §5C1.1(e) (Imposition of Term of Imprisonment). USSG §5B1.1(a)(2).

**Factor Four: The Need to Avoid Unwarranted Sentencing Disparities**

Mr. Rosario and his counsel have reviewed the sentences of his co-defendants in this case and he argues that a sentence of probation would be in line with other sentences and would avoid any sentencing disparities.

## G. CONCLUSION

Under 18 USC § 3553 (a), the Court is directed to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, deters others, protects the public from further crimes by Mr. Rosario, and provides rehabilitation and education. The ultimate question for this Court to decide is – what is just punishment for the crimes that were committed by Mr. Rosario?

As counsel for Mr. Rosario, it is my position that he should receive a sentence of probation. This sentence request is based on matters previously addressed in this

memorandum. A sentence of probation would be a sufficient sentence, but not greater than necessary to comply with the purposes of 18 USC § 3553.

    Respectfully submitted,

*/s. James M. Campbell*
JAMES M. CAMPBELL, #0004733
Attorney for Defendant, Irwing Vargas Rosario
2717 Manchester Road
Akron, OH 44319
P: (330) 745-2422
F: (330) 745-2447
jamescampbell@campbelllawakron.com